OPINION
{¶ 1} Defendant-appellant, Joey R. Lee, appeals from his jury conviction in the Franklin County Court of Common Pleas on two counts of gross sexual imposition, and three counts of rape, all with force specifications. The trial court sentenced appellant to two four-year terms of incarceration on the gross sexual imposition convictions, to be served concurrent with each other and concurrent with his rape sentences. Regarding the rape convictions, the court sentenced appellant to two eight-year terms for Counts One and Two, to be served consecutive to one another and consecutive to a life imprisonment sentence for the conviction of rape on Count Eight.
 {¶ 2} Appellant now assigns the following as error:
 {¶ 3} "I. The defendant-appellant was denied the effective assistance of counsel as guaranteed under the Fifth, Sixth andFourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.
 {¶ 4} "II. The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
 {¶ 5} "III. The trial court erred by imposing consecutive sentences upon the defendant-appellant contra R.C. 2929.14(E)(4)."
 {¶ 6} Facts adduced at trial indicate that appellant is the victim's father, and that the victim was six or seven years old at the time of the offenses, which occurred between June 1999 and April 2000. The victim, who was nine years old at the time of her testimony, stated that the first incident occurred when she was alone with appellant, who confronted her in the laundry room of the Columbus apartment where the victim lived with appellant, her mother, and her younger brother. She stated that appellant made her stand on a stool with her hands on the washing machine and her back to appellant, and that appellant put some suntan oil on his "private," put his hands on her sides to hold her still, and put his "private" in her "bottom." (Tr. Vol. I, at 62.) She stated that, after he was done, he wrapped her in a towel he took from the dryer and told her to take a shower.
 {¶ 7} The victim described a second incident in which appellant sent the victim's brother outside to play while he locked doors, shut blinds, and made her lie down on her stomach on the living room couch. She stated that appellant made her take off her pants, and took his own pants off before he put something on his "private" that he got from a container with a blue cap, and again put his "private" in her "bottom." (Tr. Vol. I, at 65.) She stated that appellant only stopped when he heard her little brother knocking on the door. She described other times in which appellant would use his "private part" to touch her "front private part" and in which appellant would kiss her on the mouth, the way "adults do," using his tongue. (Tr. Vol. I, at 67-68.)
 {¶ 8} The victim also gave an account of another incident which occurred when she and her brother were home alone with appellant. She stated she was playing hide and seek with her brother and, while the brother was hiding, she went to search for him in her parents' bedroom. She stated that appellant was in the bedroom with no clothes on, that he told her to "come here" and put "it" in her mouth, holding her head in place when she attempted to withdraw. (Tr. Vol. I, at 69.) She said he "kept going back and forth" and that he told her she would get in trouble if she told anyone. (Tr. Vol. I, at 69-70.) The victim stated she wanted to tell someone about these incidents but did not do so right away "because he told me not to," and that she "would get in trouble" if she told. (Tr. Vol. I, at 71-72.)
 {¶ 9} Eventually, the victim told a babysitter and then her teacher about the incidents, and Detective Melinda Hunt of the Columbus Police Department Juvenile Bureau was assigned the investigation of the case. Detective Hunt testified that she interviewed the victim two times, the second time because some time had passed between the first allegation and the time of appellant's apprehension and she wanted to be certain about what the victim recalled before filing warrants. She testified that the victim's story was "amazingly consistent" from one interview to the next, with the details being similar, and that this did not always occur in child sex abuse cases. (Tr. Vol. II, at 262.) She also testified that, in her experience, it frequently is possible to tell when a child's allegations are the result of being coached by an adult because the child will make vague allegations, and will be inconsistent from one interview to the next.
 {¶ 10} Gail Hornor, a pediatric nurse practitioner who does sex abuse assessments for Children's Hospital, testified that, although a physical examination of the victim revealed no evidence of anogenital trauma, in some 25 percent of such cases there is no evidence of trauma because the organs involved heal quickly. She testified that her findings were consistent with the history given by the victim, but also admitted that the findings were consistent with no abuse.
 {¶ 11} Testifying in his own defense, appellant denied any sexual contact with the victim, but admitted to having used a belt to discipline her, and to having been "very heavy-handed" in doing so. (Tr. Vol. II, at 346.)
 {¶ 12} Appellant's first assignment of error asserts that his trial counsel provided ineffective assistance by allowing Detective Hunt to bolster the victim's credibility by offering an opinion as to her veracity, by failing to object to Nurse Practitioner Hornor's testimony on the basis that she was not qualified as an expert, by failing to object to opinion testimony by Hornor, by failing to object when Hornor based her opinion on medical studies and reports which were not admitted at trial, and by failing to object to testimony by Hunt that the victim's testimony was "amazingly consistent" from interview to interview.
 {¶ 13} In order to demonstrate that his counsel's representation was ineffective, appellant must demonstrate that: (1) counsel's performance was deficient; and (2) this deficient performance prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 687. "A defendant does not state a claim for ineffective assistance of counsel unless his attorney acted unreasonably given the facts of the case, and the unreasonable conduct was prejudicial to the defense." State v. Mills (1992), 62 Ohio St.3d 357, 370, certiorari denied, Mills v. Ohio (1992),505 U.S. 1227. Counsel need not raise meritless issues. State v. Hill (1996), 75 Ohio St.3d 195.
 {¶ 14} Regarding appellant's claims that his counsel should have objected to Hunt's statements regarding the veracity of the victim and the consistency of her testimony from interview to interview, appellant correctly notes that an expert may not give an opinion as to the veracity of the statements of a child witness. See State v. Boston (1989),46 Ohio St.3d 108. However, in State v. Nicodemus (May 15, 1997), Franklin App. No. 96APA10-1359, this court held that, where the testimony of the detective is essentially an outline of police evidence-gathering procedures, rather than a bolstering of the veracity of the witness, and where the credibility of the victim is not seriously challenged, the outcome of the trial cannot be affected, and counsel's failure to object cannot constitute ineffective assistance. As noted in State v. Stowers (1998), 81 Ohio St.3d 260, Boston's exclusion of expert testimony offering an opinion as to the child's veracity "does not proscribe testimony which is additional support for the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity." (Emphasis sic.) Id. at 263.
 {¶ 15} Alleging his counsel elicited from Detective Hunt the type of opinion testimony held inadmissible in Boston, appellant cites the following exchange as an example of his counsel's ineffective assistance:
 {¶ 16} "[Defense Counsel]. You're not testifying here today that you know for a fact that these allegations are true, are you?
 {¶ 17} "[Hunt]. I'm still puzzled. I believe—
 {¶ 18} "Q. You have an opinion?
 {¶ 19} "A. Yes, I have an opinion.
 {¶ 20} "Q. But you don't know for a fact, do you?
 {¶ 21} "A. Do I know for a fact? If you're asking me, am I God and was I there and witnessed these events, no, sir, I did not. Do I believe in my heart they are true, and that's why I issued warrants for that man's — that Defendant's arrest, yes." (Tr. Vol. II, at 294.)
 {¶ 22} Although this line of questioning may be interpreted as ineffective assistance, it is not clear that appellant was prejudiced. Hunt's statements, rather than asserting that the victim was telling the truth, asserted only that it was her belief in the victim's account of the incidents which led to her decision to pursue appellant's arrest. Regarding appellant's argument that Hunt improperly testified that separate interviews of the victim produced accounts of the rapes which were "amazingly consistent," and did not implicate multiple suspects, once again, this was testimony based upon Hunt's experience in gathering evidence in these types of cases, and not a statement bolstering the credibility of the victim's testimony. Obviously, Hunt found the victim's account to be credible or she would not have pursued appellant's arrest. While appellant's defense counsel may not have conducted the most competent cross-examination of Hunt and could have raised an objection to some of the direct testimony, counsel's shortcomings were not sufficient to result in prejudice to appellant, given the evidence in this case, and so did not constitute ineffective assistance.
 {¶ 23} Appellant also argues that his trial counsel prejudicially failed to object to various aspects of the nurse practitioner's testimony, notably, that she gave an opinion as to matters for which she was not properly qualified, that her testimony was not explicitly rendered with a reasonable degree of medical or scientific certainty, and that her references to research on child sex abuse cases should have included the introduction into evidence of the research documents.
 {¶ 24} Because his counsel did not object to Hornor's testimony, appellant has waived all but plain error. Although generally a court will not consider alleged errors that were not brought to the attention to the trial court, Crim.R. 52(B) provides that the court may consider errors affecting substantial rights even though they were not brought to the attention of the trial court. "`Plain error is an obvious error * * * that affects a substantial right.'" State v. Yarbrough, 95 Ohio St.3d 227,244, 2002-Ohio-2126, at ¶ 108, quoting State v. Keith (1997),79 Ohio St.3d 514, 518. An alleged error constitutes plain error only if the error is obvious and, but for the error, the outcome of the trial clearly would have been different. Yarbrough, at 244-245. "Notice of plain error is taken with utmost caution only under exceptional circumstances and only when necessary to prevent a manifest miscarriage of justice." State v. Martin, Franklin App. No. 02AP-33, 2002-Ohio-4769, at ¶ 28.
 {¶ 25} Pursuant to Evid.R. 702, a witness may testify as an expert if:
 {¶ 26} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 27} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 28} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 29} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 30} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 31} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 32} Moreover, under Evid.R. 703, the facts or data in a particular case upon which an expert bases his or her opinion or inference may be those perceived by the expert or admitted into evidence.
 {¶ 33} Although, as the state admits, the trial court did not expressly recognize Hornor's expert witness status, appellant's counsel's failure to object to this aspect of her testimony was not prejudicial, since Hornor did testify that in the previous six years she had examined and assessed approximately 3,600 children in cases involving allegations of sexual abuse, and that over half of these were prepubescent girls. Clearly, Hornor was experienced in this area. Courts have recognized the ability of nurse practitioners to testify as experts regarding medical findings, and to give an opinion as to whether a patient's physical condition is or is not consistent with a history of sexual abuse. See State v. Ramos (June 12, 1997), Cuyahoga App. No. 70129; State v. Pierce (Feb. 12, 1997), Summit App. No. 17684. Had Hornor opined that, despite the absence of physical evidence of abuse, the victim had been sexually abused, her testimony would have been inadmissible. See State v. Crum (Oct. 26, 1998), Stark App. No. 97-CA-0134. However, Hornor testified that the anogenital area heals quickly, and that, in the months that had passed between the last time the victim alleged she was abused and the time of Hornor's examination, it was "most likely" that no injuries would be left. (Tr. Vol. II, at 309.) The prosecution's last question for Hornor was whether she could "state within a reasonable degree of medical certainty whether the history that you had obtained from the caseworker and from law enforcement was consistent with the findings of no anogenital trauma," to which Hornor answered: "The findings are consistent with the history given." (Tr. Vol. II, at 313.) On cross-examination, appellant's counsel's first question was whether those findings were also consistent with no abuse, to which Hornor answered "yes." (Tr. Vol. II, at 314.) In the absence of physical evidence of abuse, Hornor's reply that a finding of no physical evidence is consistent with the history given her by the caseworker and by law enforcement was admissible, and, clearly, appellant's counsel's cross-examination gave the proper perspective to her testimony.
 {¶ 34} Hornor's references to studies regarding child sex abuse cases were properly admitted, since most of the studies were ones in which she personally had participated. Her testimony was as follows:
 {¶ 35} "[Prosecutor]. So, does the time frame, the timing of an exam, influence whether you are typically going to find some evidence of trauma?
 {¶ 36} "[Hornor]. It certainly can. There have been studies of acute injuries in children where children have presented to emergency rooms with tears in the hymen, anal tears. And when these children are examined four, five days later, there are no physical findings.
 {¶ 37} "I know even in children that we have seen that have presented to the emergency room who had tears of the hymen that have required surgical repair, we'll see them a week later in clinic, and you can't even tell that there was an injury. And yet this child had a tear that had required surgical repair.
 {¶ 38} "That area, it's a mucosal area, both the vaginal area and the anal area. It's kind of similar to your mouth. If you cut yourself in the mouth, it heals very quickly. So that's why and there have been numerous studies that document that, that the healing comes very quickly, within two or three days. Oftentimes, there are no physical findings.
 {¶ 39} "Q. If a child gives a history of anal penetration, is it possible that it would leave no injury at all?
 {¶ 40} "A. It's most likely that it would leave no injuries. We did a study in our clinic, looking at girls, six months of girls, who gave a history of a penis penetrating their vagina. These included girls who had not reached puberty yet. Only 25 percent of those girls had any physical findings.
 {¶ 41} "We did a similar study looking at six months of boys and girls with a history of a penis penetrating their anus, and none had any physical findings. If you look at the national information for anal penetration, less than five percent of children who have given a history of anal penetration, included repeated anal penetration, have any physical findings.
 {¶ 42} "If you look at the national literature of children giving a history of a penis going into the vagina, a normal anogenital exam certainly doesn't mean that a child hasn't been sexually abused." (Tr. Vol. II, at 308-310.)
 {¶ 43} Addressing a similar argument that an expert's testimony regarding genital trauma in sexual assault cases was improperly based upon a study from a source other than the expert's personal knowledge, in State v. Flowers (May 4, 2000), Franklin App. No. 99AP-530, this court determined that, because the expert independently confirmed the information contained in a study in which he had not participated with his own personal observations both in his own practice and with regard to the particular victim in the case, his testimony was based in major part upon information perceived by him, and was not in violation of Evid.R. 703. Id., following State v. Solomon (1991), 59 Ohio St.3d 124. In the case at bar, while Hornor referenced studies done by other researchers, she did so tangential to outlining the results in which she, personally, had participated, and in relation to her observations in examining this particular victim. Therefore, the admission of her testimony did not violate Evid.R. 703, and appellant's trial counsel did not give ineffective assistance by failing to object. In addition, the trial court's failure to exclude Hornor's testimony was not erroneous, and, even if it were, we cannot say that, but for the admission of her testimony, the outcome of the trial would have been different.
 {¶ 44} Because we conclude that appellant's trial counsel's performance was not prejudicial to appellant's defense, we overrule appellant's first assignment of error.
 {¶ 45} Appellant's second assignment of error claims that his conviction was based upon insufficient evidence, the manifest weight of which did not point to his guilt. The Ohio Supreme Court outlined the role of an appellate court presented with a sufficiency of evidence argument in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
 {¶ 46} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime proven beyond a reasonable doubt. * * *"
 {¶ 47} See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175. Rather, the sufficiency of evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 80.
 {¶ 48} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387. The appellate court, however, must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, at 387.
 {¶ 49} Appellant particularly asserts that the prosecution failed to establish force so as to merit the life sentence he received on Count Eight. According to appellant, the victim's testimony was not sufficient to demonstrate that force was a factor.
 {¶ 50} Ohio courts repeatedly have held that the force and violence necessary to commit the crime of rape is dependent upon the age, size and strength of the parties and their relation to each other, and that "[w]ith filial obligation of obedience to parent," the same degree of force and violence may not be required upon a child as would be required where both perpetrator and victim are adults. See, e.g., State v. Eskridge (1988), 38 Ohio St.3d 56; State v. Dye (1998),82 Ohio St.3d 323; State v. Stokes (1991), 72 Ohio App.3d 735.
 {¶ 51} In the present case, the victim testified that she complied with appellant's demands "because he told me to." (Tr. Vol. I, at 60.) She stated that, during the first incident, appellant held her sides to prevent her moving, and, on another occasion, when appellant had put his penis in her mouth and she tried to stop him, he held her head in place, and told her not to tell anyone or she would "get in trouble." (Tr. Vol. I, at 62, 69, 71-72.) The victim's mother testified that appellant would discipline the children with a belt and that he was tougher on the children than she was. Appellant himself admitted he had used a belt on the children and that he was "very heavy-handed." (Tr. Vol. II, at 346.) Taken as a whole, the testimony was more than adequate to establish the element of force, and so we find appellant's argument not to be well-taken.
 {¶ 52} Nor was the evidence lacking on any of the other counts upon which appellant was convicted. The evidence presented, if believed, was sufficient to show that the victim was under the age of 13, and that, on several different occasions, appellant engaged in sexual conduct with the victim as defined in the rape statute, R.C. 2907.02, and had sexual contact with the victim, which acts constituted gross sexual imposition as defined in R.C. 2907.05. We overrule appellant's second assignment of error.
 {¶ 53} Appellant's third assignment of error argues that the combined effect of his sentences on all counts resulted in an unduly harsh sentence of 36 years to life, and that the trial court erred in failing to make the requisite findings justifying the lengthy sentence.
 {¶ 54} Pursuant to R.C. 2929.14(E)(4):
 {¶ 55} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 56} "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 57} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 58} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 59} In sentencing appellant, the trial court stated, in part:
 {¶ 60} "Count Eight is a mandatory life prison term, as the jury found, that the victim of the offense was under the required statutory age and also that the offense was committed with threat of force. So, the life sentence will be imposed on Count Eight.
 {¶ 61} "Counts One and Two were felonies of the first degree, rape counts. The Court will impose a sentence of eight years as to each of those counts.
 {¶ 62} "On Counts Three and Four, the gross sexual imposition counts, the Court will impose a sentence of four years on those counts.
 {¶ 63} "I am going to order that Counts Three and Four be served concurrent to Counts One, Two and Eight. I am not sure that there is enough of a separation of offenses for the Court to impose a consecutive sentence on those two matters.
 {¶ 64} "I will order, though, that Counts One and Two be consecutive to each other and to Count Eight as there clearly was a distinct period of time that these offenses were committed. And the Court believes that in this matter, it would be necessary to protect the public, and certainly that's not disproportionate to the conduct that's involved here.
 {¶ 65} "And, also, the fact that, again, we had multiple offenses being committed over a period of time. Also, with regard to this type of offense, I think it's quite clear that a single term does not really reflect the seriousness of the offense that the sentence is being imposed for.
 {¶ 66} "The Court would also note for the record that it does not appear that the Defendant has previously served a period of incarceration. However, again, as the testimony of this trial would reflect, a minimum sentence on these offenses would demean the seriousness.
 {¶ 67} "And I believe, also, that given the fact that these offenses took place over a fairly lengthy period of time that more than the minimum is necessary to protect from future conduct of this nature." (Tr. Vol. II, at 471-472.)
 {¶ 68} In addition to these statements made from the bench, the trial court made the following findings in its sentencing entry:
 {¶ 69} "The Court further finds that the consecutive sentences are necessary to protect the public from future crime and to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. The Court further finds that the harm caused by the multiple offenses was so great that a single term for any one of the offenses would not adequately reflect the seriousness and consecutive sentences are necessary to protect the public from future offenses. These findings are based upon the testimony at trial including, but not limited to: 1) the victim was Defendant's natural child 2) the offenses occurred over a period of months and perhaps years 3) the injury was worsened because of the relationship and the age of the victim."
 {¶ 70} A trial court has broad discretion when sentencing, and this court will not override the court's sentence absent a finding of an abuse of discretion. See, e.g., State v. Epley (Aug. 25, 1998), Franklin App. No. 97APA11-1467. Given the evidence before the trial court in the present case, we cannot say that the court abused its discretion in concluding that consecutive sentences were merited, and that the facts supported appellant's life sentence. Clearly, the extreme youth of the victim and the fact that she was appellant's own daughter make his offenses particularly egregious. In addition, the offenses occurred on multiple occasions, were perpetrated by an authority figure with a history of "heavy-handed" physical disciplinary techniques, and were accompanied by threats that if the victim told she would be in trouble. The trial court's statements were in compliance with the statutory requirements that reasons and findings be given in support of the sentences imposed. Finding appellant's sentence to have been justified in light of the facts of the case, we conclude the trial court did not abuse its discretion in imposing consecutive sentences. Appellant's third assignment of error is overruled.
 {¶ 71} Based upon the foregoing, appellant's first, second and third assignments of error are overruled, and the judgment of the Franklin County Court of Appeals finding appellant guilty of rape, rape with force, and gross sexual imposition, is affirmed.
Judgment affirmed.
KLATT and WATSON, JJ., concur.